SIGNED THIS: May 6, 2014

_____
**Thomas L. Perkins
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DAMIEN JOHN POWELL and | ) | |
| CONSTANCE REGINA POWELL, | ) | Case No. 13-81312 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| JASON LEE HOBART, | ) | Case No. 13-81645 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| CHRISTOPHER DOYLE, | ) | Case No. 13-81695 |
| | ) | |
| Debtor. | ) | |

**O P I N I O N**

The primary issue in these cases, consolidated for purposes of the Opinion, is whether an employee's future right to receive a profit sharing payment is property of his chapter 7 bankruptcy estate. Each of the Debtors, Damien John Powell, Jason Lee Hobart,

and Christopher Doyle, were employed by Deere & Company as of the date of the filing of their respective bankruptcy petitions. Before the Court are separate motions filed by the chapter 7 trustee in each case, for turnover of a prorated portion of the profit sharing benefits received postpetition by the Debtors from Deere.

Pursuant to a collective bargaining agreement (CBA) between the various divisions of Deere and the International Union United Automobile Aerospace and Agricultural Implement Workers of America and its Locals (Union), the Debtors, as employees and Union members, became eligible to participate in a profit sharing plan.[1] The plan provides that the Plan Year for 2013 runs from October 29, 2012 to October 27, 2013. Section 1 A, describing the type of plan and its purpose, provides:

> This Plan is a profit sharing plan. The purpose of the Plan is to provide contingent benefits to employees to reflect their efforts in contributing to the profitability of the Company and to serve as an incentive for the employees further to contribute to the continued and further financial success of the Company and to its ability to provide continued employment opportunities to its employees.

An employee becomes a participant after completing one year of company service.

Section 3 B, governing eligibility and participation in the plan, provides:

> Any participant shall be eligible for a profit sharing benefit under the Plan for any Plan Year which commences on or after 2 November 2009 provided that he is an active employee of the Company on the last day of that Plan Year or is on leave of absence or layoff from the Company on the last day of that Plan Year, except that any otherwise eligible employee who died, retired, or was employed at a facility of the Company which was sold during such year shall also be covered as if he were an active employee on the last day of

---

[1] A copy of the plan was submitted by the parties. The plan became effective on November 2, 2009, and expires October 1, 2015.

that Plan Year.

Section 4 A, establishing the formula for calculating the amount of the benefit, provides in part:

> The amount of the benefit which shall accrue for a participant for any Plan Year shall be computed by multiplying the following three elements:
>
> (1) the number of hours worked in that Plan Year by the participant;
>
> (2) the average straight-time hourly rate of pay plus any cost-of-living and general wage increase allowances as of the last day of the Plan Year (or as of the last day of active work of the employee if earlier). In the calculation of the Average Earnings Rate for CIPP employees, weeks in which the employee is required to work when their CIPP plan is not in operation will be excluded from this calculation.
>
> (3) the Profit Sharing Benefit Percent(s) as determined in Paragraph B below times 50%.

The plan provides that any benefits due participants are to be paid to eligible participants not later than January 15th following the end of the Plan Year.

Section 6 D of the plan, governing the employment rights of the participants, provides:

> Participation in the Plan will not give any employee of the Company any right to be retained in the service of the Company nor any right to claim any benefit under the Plan unless such right or claim has specifically accrued under the terms of the Plan.

The provision of the plan governing amendment and termination (Section 6 C) provides that any amendment or termination proposed by Deere with respect to union employees,

may not be adopted without the consent of the appropriate collective bargaining representative. Finally, the plan provides that the interests of the plan participants are nonassignable, as follows:

> The interests of participants and their beneficiaries under the Plan are not in any way subject to their debts or other obligations and may not be voluntarily or involuntarily sold, transferred or assigned by them except with respect to indebtedness owing to the Company.

Powell filed a chapter 7 petition on June 28, 2013; Hobart filed a chapter 7 petition on August 19, 2013; and Doyle's chapter 7 petition was filed on August 26, 2013.[2] The Trustee sought turnover of a prorated portion of the profit sharing benefits to be received by each of the Debtors in January, 2014, based on the dates of filing of the petitions.[3] The Debtors objected to the motions, claiming that the benefits are not property of the bankruptcy estate. There is no dispute as to the essential facts of the cases. Hearings were held and the parties have submitted briefs.

**ANALYSIS**

Two fundamental, but competing, policies underlie much of bankruptcy law: obtaining a maximum and equitable distribution for creditors while at the same time ensuring a fresh start for individual debtors. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 563, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (citing *Stellwagen v. Clum*, 245 U.S. 605, 617, 38

---

[2] Powell and Hobart are represented by the same counsel and filed a joint brief. Doyle filed a separate brief, incorporating the arguments made by Powell and Hobart, in addition to assertions of his own.

[3] The Trustee sought turnover of 49% of the benefit to be received by Powell, based on a ratio of 179/365. She sought turnover of 63.2% of Hobart's benefit based on a ratio of 231/365 and 65.9% of Doyle's benefit, based on a ratio of 238/365. According to the brief filed by Powell and Hobart, they each received the profit sharing payment on January 9, 2014. The Trustee, in her responsive brief, states that Doyle received a profit sharing benefit of $4,655.57 in January, 2014. The amounts received by Powell and Hobart are not a part of the record. The Trustee's formula incorrectly uses the calendar year rather than the Plan Year as the applicable period.

4

S.Ct. 215, 218, 62 L.Ed. 507(1918)). In general terms, the filing of a chapter 7 petition effects a definite cleavage in time, so that property of the debtor owned on that date becomes property of the bankruptcy estate and after-acquired assets, with certain exceptions, become the debtor's personal property, free of all claims that are discharged in the bankruptcy case. *White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924).

Section 541 of the Bankruptcy Code broadly defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It is well-settled that this expansive definition of property of the estate includes "every conceivable interest of the debtor," including interests which are "future, nonpossessory, contingent, speculative, and derivative." *Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), *abrogated on other grounds by Law v. Siegel,* --- U.S. ---, 134 S.Ct. 1188, 1195 (2014). Although the question of whether an interest should be classified as property of the estate is one of federal law, a court should first look to state law to determine the nature of the debtor's interest. *Butner v. U.S.*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Krueger*, 192 F.3d 733 (7th Cir. 1999).

To determine whether monies not payable until a point in time after the petition date may be included in the estate, the canonical test, originating in *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 515, 15 L.Ed.2d 428, 432 (1966), queries whether the debtor's interest is "sufficiently rooted in the pre-bankruptcy past" of the debtor so as to warrant its inclusion in the estate. *In re Meyers*, 616 F.3d 626, 628 (7th Cir. 2010); *Tyler v. DH Capital*

5

*Management, Inc.*, 736 F.3d 455 (6th Cir. 2013); *In re Jokiel*, 447 B.R. 868 (Bankr.N.D.Ill. 2011).[4] Secondly, where an individual debtor's wages or earnings from employment are at issue, the Bankruptcy Code expressly excludes from the estate earnings from services performed postpetition. 11 U.S.C. § 541(a)(6). In the context of an employee's right to a payment from his employer, these two principles must be applied in tandem. While a payment right that is sufficiently rooted in a debtor's prebankruptcy past is generally includable in the bankruptcy estate, any portion of the payment attributable to postpetition services is excludable.

Where a debtor has the right to a future payment under a prepetition contract with his employer, that right thus has its origin in the prepetition period and so passes the threshold test for inclusion in property of the estate. The court must then determine whether the right to the future payment is "sufficiently rooted" in the prepetition period by asking whether any of the services that are the consideration for the payment were performed prepetition. If no significant services were performed prepetition, it is difficult to see how the future payment right could be said to be sufficiently rooted in the prebankruptcy past to warrant inclusion in the estate. But where the future payment is linked, at least in part, to services rendered prepetition, the "sufficiently rooted" inquiry is ordinarily satisfied. If only a portion of the required services were performed prepetition, the court must then allocate a corresponding proportion of the future payment

---

[4] The full test as stated by the court in *Segal* is whether the property is "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start" that it should be included in the bankruptcy estate. Courts have recognized that the second prong of the test was eliminated by enactment of the Bankruptcy Code. *See Tyler*, 736 F.3d at 461-62.

to the estate and exclude the rest.

The Debtors do not dispute that the Deere CBA is a valid and enforceable prepetition contract and that, as a general matter, an employee's rights and benefits under a CBA are interests in personal property under Illinois law. The two basic issues to be addressed are whether the Debtors' interest in the benefit payable under the profit sharing plan is sufficiently rooted in their prebankruptcy past to warrant inclusion in property of the estate and, if so, a determination of the portion of the benefit that is properly included in the estate.

The starting point of the inquiry is the terms and provisions of the profit sharing plan. The plan is labeled a "Profit Sharing Plan" and the payment is referred to as a "profit sharing benefit." The benefit is computed and paid on the basis of profitability during a "fiscal accounting year" or "Plan Year." The plan provides that the amount of an employee's benefit that accrues during such year is determined in part by the number of hours worked in that year by the employee multiplied by the employee's hourly rate of pay. The benefit is payable not later than January 15 following the end of the Plan Year and is to be treated as taxable earnings of the employee. If the employee is deceased at the time of payment, the benefit is payable to his designated beneficiary. To be eligible to receive a profit sharing benefit, the employee must be an active employee of the company on the last day of the Plan Year, or on leave of absence or layoff.

The Debtors were each eligible employees under the profit sharing plan when they filed their bankruptcy petitions, and prior thereto, and each was an active employee on the last day of the Plan Year. When they filed their petitions during the course of the 2013 Plan

7

Year, they had already accrued conditional rights based on hours worked, which is a primary component of the benefit amount formula set forth in the profit sharing plan. The amount of the profit sharing benefit is tied directly to the hours worked during the Plan Year which, in these cases, includes both prepetition and postpetition labor. Since the profit sharing benefit received by each Debtor was attributable, in part, to substantial prepetition services, the Court determines that the benefit is sufficiently rooted in the Debtors' prebankruptcy past to be included in the bankruptcy estate.

The fact that a portion of the profit sharing benefit derives from postpetition services is not a reason to exclude the entire benefit from the estate. The issue is simply one of properly allocating to the estate only that portion of the benefit that derives from the prepetition services. *In re Meyers, supra; In re Ryerson,* 739 F.2d 1423 (9th Cir. 1984); *In re Bosack,* 454 B.R. 625 (Bankr.W.D.Pa. 2011). In this way, section 541(a)(6)'s exclusion from the bankruptcy estate for "earnings from services performed by an individual debtor after the commencement of the case," is correctly implemented.

The Debtors' position that the profit sharing benefits are not property of the estate because the potential distribution was subject to unperformed contingencies when the bankruptcy petitions were filed is patently incorrect and easily dispensed with.[5] The law is clear. It is beyond dispute that a contingent future interest is a legally cognizable interest which becomes property of the bankruptcy estate. *In re Wick,* 276 F.3d 412, 415 (8th Cir. 2002); *In re Montgomery,* 224 F.3d 1193, 1194 (10th Cir. 2000); *Matter of Yonikus,* 996 F.2d at

---

[5]The Debtors' argument may have had more vigor under the Bankruptcy Act. Under the Act, a contingent interest in personal property passed to the trustee only if it was capable of being assigned or was subject to execution, seizure, or sequestration. The Bankruptcy Code redefined and expanded the scope of property of the estate.

869; *In re Neuton,* 922 F.2d 1379, 1382-83 (9th Cir. 1990). Rights and claims of a debtor that on the petition date are subject to future conditions or unperformed obligations of the debtor are held by the estate subject to those same conditions and obligations. *Matter of Sanders,* 969 F.2d 591, 593 (7th Cir. 1992)(trustee takes property subject to same restrictions that existed at commencement of case); *In re South Side House, LLC,* 474 B.R. 391, 402 (Bankr.E.D.N.Y. 2012)(estate takes its interest in property subject to the conditions under which the debtor held the interest); *In re Tomer,* 128 B.R. 746, 756-58 (Bankr.S.D.Ill. 1991)(contract claims are acquired by the estate subject to any conditions and unperformed obligations of the debtor as are contained in the contract). Where a bankruptcy trustee takes rights subject to contingencies, it is permissible and proper for the trustee to keep the estate open pending the occurrence or non-occurrence of the contingencies, in order to establish the validity and value of the rights. *See In re Ruetz,* 317 B.R. 549, 553 (Bankr.D.Colo. 2004).

In *In re Booth,* 260 B.R. 281 (6th Cir.BAP 2001), the chapter 7 trustee moved for turnover of any profit sharing payment the debtor received from his employer, DaimlerChrysler. To receive a profit sharing payment, DaimlerChrysler must have had profits and an employee must have been employed at the end of the year. The debtor argued that when he filed his petition, no profit had been declared and his employment could have been terminated prior to the end of the year. Based on these contingencies, the debtor contended that he had no legal or equitable interest in a profit sharing payment when he filed for bankruptcy relief. The debtor relied upon *In re Sharp,* 253 B.R. 204 (E.D.Mich. 2000), for the court's reasoning that the determinative issue is whether the

9

debtor had an "enforceable right" to receive the bonus check when he filed his petition. The Bankruptcy Appellate Panel rejected that reasoning, as follows:

> Focusing on whether the debtor had an "enforceable" contract right when the petition was filed would exclude all contingent interests from the bankruptcy estate, because by definition, a contingent interest is not "enforceable" until the contingency is met. The approach in *Sharp* is thus inconsistent with the broad concept of property of the estate in § 541(a)(1) and with the extensive case law, reviewed above, holding that a contingent interest can be property of the estate. Section 541 neither states nor implies any requirement that the debtor must have an enforceable interest in property for that interest to become property of the bankruptcy estate. Accordingly, the Panel rejects the reasoning and result of *Sharp*.
>
> The Panel agrees with the bankruptcy court that in the present case, the Debtor's profit sharing payment was sufficiently rooted in his prepetition past to be included in property of his bankruptcy estate under § 541(a).

260 B.R. at 290. This Court agrees with the Bankruptcy Appellate Panel's analysis. The Trustee's reliance on *Booth* is well-founded. Although each Debtor's right to receive a profit sharing payment in these cases was contingent on their continued employment at Deere through the end of the Plan Year and on Deere's profitability, those contingencies do not defeat the general principle that contingent property interests enter the estate, albeit subject to the future occurrence of the contingencies.

The Debtors alternatively contend that their interest under the profit sharing plan is akin to a trust, relying on the restriction against transfer provision in the Deere plan. Under the Bankruptcy Code, the general rule is that an interest of the debtor in property becomes property of the estate notwithstanding any provision in an agreement "that restricts or conditions transfer of such interest by the debtor." 11 U.S.C. § 541 (c)(1)(A). As an exception to that rule, a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a

bankruptcy case. 11 U.S.C. § 541(c)(2). So contractual restrictions on transfer are ineffective in bankruptcy except as applicable to a beneficial interest of the debtor in a trust. *In re Jokiel,* 453 B.R. 743, 750 (Bankr.N.D.Ill. 2011).

A restriction on transfer provision, by itself, is insufficient to give rise to a trust. *In re Greenly,* 481 B.R. 299, 312 (Bankr.E.D.Pa. 2012). The Deere Profit Sharing Plan makes no mention of a trust, imposes no fiduciary duties and fails to provide for any property to be held in trust.[6] Deere's agreement to pay profit sharing benefits is simply an unfunded contract obligation. With no specific *res* or trust *corpus,* a trust is not created. *Sears v. First Federal Sav. & Loan Ass'n of Chicago,* 1 Ill.App.3d 621, 631, 275 N.E.2d 300 (Ill.App. 1 Dist. 1971); *In re Jokiel,* 453 B.R. at 751-52; *In re Booth,* 260 B.R. at 290-91. The profit sharing plan's nonassignability provision is of no benefit to the Debtors. Likewise, the same provision's statement that the participant's interests under the plan are not subject to their debts is unenforceable since debtors in bankruptcy are not permitted to defeat or limit the scope of section 541(a) by language in a contract.

Another case with similar facts is *In re Edmonds*, 263 B.R. 828 (E.D.Mich. 2001), involving a profit sharing agreement between the United Auto Workers' Union and Ford Motor Company. Like the debtor in *Booth* and the Debtors in the present cases, the debtor in *Edmonds* was entitled to a profit sharing payment, based on his eligible earnings for that year, if the company made a profit and he was employed on the last day of the calendar

---

[6]In *Patterson v. Shumate,* 504 U.S. 763, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court held that an ERISA-qualified pension plan met the requirements of section 541(c)(2) where pension assets were funded and subject to fiduciary duties imposed by statute, and where ERISA imposed a restriction on the transfer of a debtor's beneficial interest. The Debtors do not argue that the Deere profit sharing plan is ERISA-qualified.

11

year. The profit sharing agreement set forth a mathematical formula, based on the days that the debtor had worked throughout the year. Noting that the agreement was entered into prior to the filing, the court held that the debtor's interest passed the *Segal* test.

A contrary result was reached by the courts in *In re Palmer*, 57 B.R. 332 (Bankr.W.D. Va. 1986); *Sharp v. Dery*, 253 B.R. 204 (E.D.Mich. 2000); and *In re Chappo*, 257 B.R. 852 (E.D.Mich 2001), cases upon which the Debtors rely. In each case, however, the payment of a bonus was payable solely at the discretion of the debtor's employer. The Tenth Circuit has reconciled these two lines of cases in *In re Dittmar*, 618 F.3d 1199 (10th Cir. 2010), where the court concluded that contingencies such as continued employment and company profit as existed in both *Booth* and *Edmonds*, did not transform the employee's interest, firmly rooted in the prebankruptcy past, into a mere expectancy.[7] The court distinguished the latter cases involving discretionary bonuses, essentially regarding them as amounting to empty promises, unenforceable by the debtors. Turning to the case before it, the court determined that the debtors' future interest in stock appreciation rights under an equity participation program for union-represented employees, was more akin to the

---

[7] As Judge Brown, dissenting from the majority in the lower decision by the Bankruptcy Appellate Panel noted, the analysis of contingent property interests is imprecise:

> While these general principles governing property of the estate under § 541 generate little controversy, their application varies widely, especially regarding contingent property interests. Given that our legal system recognizes a wide variety of property interests, this diversity of treatment is not surprising. Nevertheless, the varying analyses make it difficult to cull any settled, functional rule for determining when a contingent interest is property of the estate. At best, the case law can be said to exist on a continuum. At one end are contingent property interests that were clearly created and rooted in a debtor's prebankruptcy past, such as a prepetition contract that will result in the debtor receiving payments postpetition. At the other end of the spectrum are interests so amorphous, so speculative, or subject to so many contingencies, that courts deem them to be "mere expectancies," rather than existing property interests. Most interests fall in between these two extremes, and often have a mix of characteristics that make it very difficult to ascertain whether the interest has crossed the line from "mere expectancy" to contingent property interest within the scope of § 541.

*Parks v. Dittmar (In re Dittmar)*, 410 B.R. 71, 84-85 (10th Cir.BAP 2009)(Brown, J. dissenting).

nondiscretionary profit sharing benefits in *Booth* and *Edmonds*.

This Court agrees with the *Dittmar* court's analysis. The facts of the present cases are indistinguishable from those before the courts in *Booth* and *Edmonds*. The Debtors' reliance on the provision of the plan providing that it may be modified or terminated by Deere's board of directors, subject to the consent of the Debtors' union representative, is unpersuasive. That provision, in this Court's view, does not interject such a degree of uncertainty to the profit sharing benefits as to exclude the Debtors' interests from the bankruptcy estates. Nor can it be considered to render the benefits discretionary. The Court considers the most compelling factors in determining that the Debtors' right to receive the Deere profit sharing benefits should be included in their bankruptcy estates, to be that they each held a contractual right to the benefits, albeit contingent, at the time the petitions were filed; that the terms of the contract tie the benefit to hours worked throughout the Plan Year; and that each Debtor, before bankruptcy, worked substantial hours that accrued toward the profit sharing benefit.

Doyle's additional contention that the benefit is not property of the bankruptcy estate because it would be payable to others should he be deceased, considered physically or mentally incompetent, or indebted to his employer at the time the payment is made, is just a different spin on the contingent nature of the payment of the benefit. Those contingencies do not override the fundamental principle that contingent future interests become property of the estate. If any contingency that could defeat the Debtors' right to receive the payment, or could reduce the amount of the payment, actually occurs, then the estate's interest is likewise defeated or reduced. But that mere possibility, on the petition

13

date, does not serve to exclude the contingent interest from the estate.

Doyle's protestation that a ruling in favor of the Trustee would invoke constitutional concerns, namely, the Thirteenth Amendment's prohibition against involuntary servitude, by forcing the Debtors to work for their creditors, is without merit. The Debtors are not compelled to continue their employment with Deere. Having elected to do so did not subject them to involuntary servitude.

Finally, the Debtors' assertion that the Trustee's pursuit of the profit sharing benefits affronts the Bankruptcy Code's fresh start policy by permitting a case to remain open for an indefinite period of time, is also flawed. A trustee is generally and properly given broad discretion in administering the assets of a bankruptcy estate, including a debtor's contingent interests. *Edmonds*, 273 B.R. at 530-31; *Booth*, 266 B.R. at 111. Here, the Debtors' cases have been open for less than one year. Though they may have preferred a quicker disposition of their bankruptcies, the Trustee's actions undertaken here in collecting property of the estate were in fulfillment of her statutorily imposed duties and have not unduly prolonged the process of administration of the Debtors' estates.

Having determined that the Debtors' future rights to the prepetition share of the profit sharing benefits became property of the estate on the petition dates, the Court must determine the amounts which are subject to turnover to the Trustee. Because the profit sharing benefit is based on both prepetition and postpetition employment, a *pro rata* allocation is appropriate. The Court will apply a formula, where the numerator of the fraction represents the number of days from the beginning of the Plan Year to the day on which the petition was filed, and the denominator represents the total number of days in

14

the Plan Year.[8]  *See In re Meyers*, *supra*, (endorsing "*pro rata* by days" method to allocation of tax refund).  The application of such a formula appears to be particularly appropriate here because the calculation of the benefit payable to a participant in the plan is based on the number of hours worked in that plan year. *See Jokiel*, 447 B.R. at 874-75.  As long as the participant worked steadily during that time frame, this result will be fair and equitable to both the Debtors and their creditors.  As the bankruptcy court noted in *Booth*, however, a "*pro rata* by days" formula will not be appropriate where the debtor establishes that a greater portion of the profit sharing payment was earned as a result of postpetition services.  266 B.R. at 113.  The debtor would bear the burden to establish that a different method of calculation is appropriate.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

###

---

[8]Damien Powell filed on the 244th day of the Plan Year. Jason Hobart filed on the 296th day. Christopher Doyle filed on the 303rd day. So the proportion of the profit sharing payment that belongs to the estate is determined according to the following fractions:

    Powell   243/365
    Hobart   295/365
    Doyle    302/365